U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

JUN - 1 2017

CL
By
    Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DAVID B. COLLIE, | § |
| Plaintiff, | § |
| VS. | § NO. 4:17-CV-211-A |
| HUGO BARRON, ET AL., | § |
| Defendants. | § |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant Hugo Barron ("Barron"), the motion of defendants L. Harrington ("Harrington") and D.G. Rohloff ("Rohloff"), and the motion of defendant Tarrant County, Texas ("Tarrant County")[1], to dismiss. Plaintiff, David B. Collie, has responded to the motions of Barron and Tarrant County and they have replied. Plaintiff has not responded to the motion of Harrington and Rohloff, which is ripe for ruling.

### I.

### Plaintiff's Claims

On April 18, 2017, plaintiff filed his first amended complaint, asserting claims arising out of a shooting that left him paralyzed from the chest down. Doc.[2] 30. Plaintiff alleges:

---

[1] The motion was also filed on behalf of defendant Vanessa Flores ("Flores"), but the claims against her were dismissed by stipulation.

[2] The "Doc. __" reference is to the number of the item on the docket in this action.

On July 27, 2016, at approximately 11:55 p.m., the City of Fort Worth received a 911 call regarding a robbery committed by two black males. The first suspect was in his teens or early 20's, 6'1" tall and weighed approximately 180 pounds, having a small "afro." The second suspect was 6'4" tall and also in his teens or early 20's. Doc. 30 at 4-5, ¶ 19.[3] Barron searched apartment complexes in the area. Upon seeing plaintiff, who was 33 years old, 5'6" and 150 pounds, Barron got out of his police car and shot plaintiff in the back seven seconds later. Barron did not use cover, did not give clear commands, did not call or wait for additional law enforcement personnel, did not use additional illumination, did not warn plaintiff he would shoot, and did not determine whether plaintiff posed a threat to safety before shooting plaintiff. Doc. 30 at 5, ¶ 20. The bullet struck plaintiff in the back, punctured a lung, and severed his spine. Doc. 30 at 6, ¶ 20. According to internal affairs interviews, Barron and another officer accompanying him (Flores, who has been dismissed), were yelling potentially conflicting commands at plaintiff. Doc. 30 at 6, ¶ 21. Harrington and Rohloff wrote narratives and gave statements that plaintiff pointed a weapon at

---

[3]The police report to which plaintiff refers does not describe the suspects in this manner, but only says that the first was a black male wearing no shirt, black basketball shorts, and Nike Air Foamposites and was around 6'1" and skinny, having a short afro hair style. The second suspect was also shirtless, wearing khaki pants, around 6'4" and skinny, and having short hair. Doc. 30, Ex. A.

Flores. Plaintiff was charged with aggravated assault on a public servant, which was ultimately resolved in plaintiff's favor. Doc. 30 at 7, ¶ 23. Following surgery, plaintiff was shackled to a hospital bed for 61 days and placed under armed guard 24 hours a day. Doc. 30 at 7, ¶ 24. During his last three weeks in custody, plaintiff was unshackled for one hour at a time two or three days a week, but placed in handcuffs around his wrist and ankles. Id. Plaintiff was forced to remain on his back and developed severe pressure sores. Id. The shackles were removed only after the grand jury refused to indict plaintiff. Id.

Plaintiff asserts a number of claims. As to Barron, he alleges use of excessive force, racketeering activity, false imprisonment, and malicious prosecution. As to Harrington and Rohloff, he alleges racketeering activity, false imprisonment, and malicious prosecution. As to Tarrant County, plaintiff alleges cruel and unusual punishment, false imprisonment, and vicarious liability.

II.

Grounds of the Motions

Barron says that plaintiff has failed to state a plausible claim against him and that, in any event, Barron is entitled to qualified immunity. Harrington and Rohloff say the same. Tarrant

3

County says that plaintiff has not stated any plausible state or federal law claims against it.

III.

Applicable Legal Principles

A.  Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Iqbal, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

As the Fifth Circuit has explained: "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." Anderson v. U.S. Dep't of Housing & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008). In sum, "a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law." Id. at 528-29.

In considering a motion to dismiss for failure to state a claim, the court may consider documents attached to the motion if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003). The court may also refer to matters of public record. Davis v. Bayless, 70 F.3d 367, 372 n.3 (5th Cir. 1995); Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). This includes taking notice of pending judicial proceedings. Patterson v. Mobil Oil Corp., 335 F.3d 476, 481 n.1 (5th Cir. 2003). And, it includes taking notice of governmental websites. Kitty Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 457 (5th Cir. 2005); Coleman v. Dretke, 409 F.3d 665, 667 (5th Cir. 2005).

B.  Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of

clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Mullenix v. Luna, 136 S. Ct. 305, 308 (2015); Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively

reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer to lose his qualified immunity defense. In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.
> . . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994).

C. Vicarious Liability

The law is clearly established that the doctrine of respondent superior does not apply to § 1983 actions. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978);

Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990). Liability may be imposed against a governmental entity only if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Connick v. Thompson, 563 U.S. 51, 60 (2011). Local governments are responsible only for their own illegal acts. Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). Thus, plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy caused their injury. Monell, 436 U.S. at 691. Specifically, there must be an affirmative link between the policy and the particular constitutional violation alleged. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

Proof of a single incident of unconstitutional activity is not sufficient to impose liability, unless proof of the incident includes proof that it was caused by an existing, unconstitutional policy, which policy can be attributed to a municipal policymaker. Tuttle, 471 U.S. at 823-24. (If the policy itself is not unconstitutional, considerably more proof than a single incident will be necessary to establish both the requisite fault and the causal connection between the policy and the constitutional deprivation. Id. at 824.) Thus, to establish governmental liability requires proof of three elements: a

policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued en banc in response to a motion for rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

The general rule is that allegations of isolated incidents are insufficient to establish a custom or policy. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992); McConney v.

10

City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989); Languirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983).

D.  Excessive Force

The elements of an excessive force claim are (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007). A use of deadly force is presumptively reasonable when an officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others. Mace v. City of Palestine, 333 F.3d 621, 624 (5th Cir. 2003).

The reasonableness of use of force is to be determined from the perspective of the officer on the scene and not with "the 20-20 vision of hindsight." Mace, 333 F.3d at 625 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). That the officer himself may have created the situation does not change the analysis. In other words, that the officer could have handled the situation better is not a factor in the constitutional analysis. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985). See also City & Cty. Of San Francisco v. Sheehan, 135 S. Ct. 1765, 1777 (2015)(failure to follow training does not itself negate entitlement to qualified immunity). And, if there is no underlying constitutional violation by the officer, i.e., no

11

excessive force, then the officer's employer cannot be held liable. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986).

E.   <u>Texas Tort Claims Act</u>

Under the doctrine of sovereign immunity, a governmental entity cannot be held liable for the actions of its employees unless a constitutional or statutory provision waives the entity's sovereign immunity in clear and unambiguous language. <u>See</u> <u>Univ. of Tex. Med. Branch v. York</u>, 871 S.W.2d 175, 177 (Tex.1994); <u>Duhart v. State</u>, 610 S.W.2d 740, 742 (Tex.1980). The Texas Tort Claims Act provides such a waiver in certain circumstances. Tex. Civ. Prac. & Rem. Code § 101.025; <u>York</u>, 871 S.W.2d at 177. However, the Act does not waive immunity with respect to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code § 101.057(2); <u>see</u> <u>Goodman v. Harris County</u>, 571 F.3d 388, 394 (5th Cir. 2009). Claims of assault, battery, false imprisonment, and malicious prosecution are unquestionably intentional torts for which immunity has not been waived. Tex. Civ. Prac. & Rem. Code § 101.057(2); <u>Goodman v. Harris Cnty.</u>, 571 F.3d 388, 394 (5th Cir. 2009); <u>Texas Dep't of Pub. Safety v. Petta</u>, 44 S.W.3d 575, 580 (Tex. 2001). Use of excessive force is an intentional tort and an alternative negligence pleading cannot save the claim where the claim is based on the same conduct as

the intentional tort claim. Saenz v. City of El Paso, 637 F. App'x 828, 830-31 (5th Cir. 2016); Cox v. City of Fort Worth, 762 F. Supp. 2d 926, 935 (N.D. Tex. 2010).

IV.

Analysis

A. Claims Against Barron

Barron contends that plaintiff has not pleaded sufficient facts to state a plausible claim or to overcome his qualified immunity defense. Torns v. City of Jackson, 622 F. App'x 414, 416 (5th Cir. 2015). At this, the pleading stage, the court is satisfied that plaintiff has alleged a plausible claim for excessive force. Barron's defense of qualified immunity as to this claim would be better addressed by motion for summary judgment.

Plaintiff apparently recognizes that he has not stated a claim against Barron for racketeering activity[4] or for malicious

---

[4]The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), provides a private civil action to recover damages for injury to one's business or property by the conduct constituting the violation. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481, 496 (1985). To state a claim, plaintiff must plead (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. Id. at 496. A plaintiff only has standing if he has been injured in his business or property. Id. Personal injuries and losses flowing therefrom are insufficient to establish RICO standing. Vickers v. Weeks Marine, Inc., 414 F. App'x 656, 657 (5th Cir. 2011); Evans v. City of Chicago, 434 F.3d 916, 931 (7th Cir. 2006). And, civil rights violations do not constitute racketeering activity within the meaning of RICO. Bowen v. Oistead, 125 F.3d 800, 806 (9th Cir. 1997). Plaintiff has not pleaded facts that meet these requirements.

prosecution,[5] as he makes no response to Barron's arguments with regard to those claims. Plaintiff does address false imprisonment, but only to set forth the elements of such a claim. Doc. 40 at 7-8. He does not cite any cases to show that the sparse facts he has alleged are sufficient to overcome Barron's qualified immunity, much less to state a plausible claim for false imprisonment against Barron. Plaintiff does not dispute that if he is asserting a state law claim, it is barred by Tex. Civ. Prac. & Rem. Code § 101.106(a).

B.  Claims Against Harrington and Rohloff

Harrington and Rohloff likewise contend that plaintiff has not stated plausible claims against them and that they are entitled to qualified immunity as to each of plaintiff's claims against them. Plaintiff has not filed a response to their motion, apparently conceding that he has not stated any plausible claims against them.[6]

C.  Claims Against Tarrant County

The only facts pleaded that may relate to the claims against Tarrant County are as follows:

---

[5] Barron notes that plaintiff has made an irrevocable election to pursue his state tort claims against City of Fort Worth. Tex. Civ. Prac. & Rem. Code § 101.106(a). And, malicious prosecution standing alone is not a constitutional violation that may be pursued under 42 U.S.C. § 1983. Castellano v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003)(en banc).

[6] See n. 4 (plaintiff has not pleaded a RICO claim); n.5 (plaintiff has elected to sue City of Fort Worth for his state law torts).

14

> Following surgery to save his life, Plaintiff was
> shackled to a hospital bed for 61 days and placed under
> armed guard 24 hours a day. Plaintiff remained shackled
> to the bed 24 hours a day for more than [a] month.
> During his last three weeks in custody, Plaintiff now
> paralyzed was unshackled from his bed for one hour at a
> time two to three days a week. However, even when
> Plaintiff was unshackled from the bed, handcuffs were
> placed around his wrist and ankles. The cuffs around
> Plaintiff's wrists and ankles were then joined by a
> chain. Plaintiff was then placed in [a] wheel chair and
> still unable to relieve himself of the pressure that
> caused sores on his body. Beyond those periods, where
> Plaintiff was still shackled to a bed for 23 hours a
> day, Plaintiff remained shackled to the bed 24 hours
> each other day until he was "no billed" by the Grand
> Jury. Shackling the paralyzed plaintiff to the bed
> forced him to remain on his back which lead to the
> development of sever [sic] Decubitus Ulcers (commonly
> referred to as bed sores or pressure sores). The
> shackles were removed only after the Grand Jury refused
> to indict Plaintiff on the charge of Aggravated Assault
> of a Public Servant. Upon his release from Harris
> Methodist Hospital, Plaintiff was detained in the jail
> unit of another hospital, shackled to the bed and
> forced to incur medical bills as a result. Plaintiff
> was never implicated o charged in the alleged
> aggravated robbery.

Doc. 30 at 7-8, ¶ 24.

The first cause of action asserted against Tarrant County is for cruel and unusual punishment. Doc. 30 at 10-11, ¶¶ 32-37. Again, plaintiff recites some of the facts regarding the shackling and says Tarrant County was acting by and through its sheriff's department. Doc. 30 at 11, ¶ 34.

15

The second cause of action asserted against Tarrant County is for false imprisonment. It simply says that Tarrant County and other defendants "acting individually and collectively willfully detained Plaintiff by shooting him in the back, arresting him for the demonstrably false criminal offense of Aggravated Assault on a Peace Officer, shackled him to a bed and posted an armed officer outside of his hospital room door." Doc. 30 at 25, ¶ 68.

The third cause of action asserted against Tarrant County is for "vacarious liability" for the actions of defendant Flores. Plaintiff says that he invokes the doctrine of "Respondent Superior" against Tarrant County for the actions of defendant Flores, who was engaged in the furtherance of Tarrant County's business. Doc. 30 at 29, ¶¶ 82-84.

As Tarrant County points out, it cannot be held liable under a theory of respondeat superior or vicarious liability. Monell, 436 U.S. at 694. Liability under § 1983 requires a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom. Piotrowski, 237 F.3d at 578. Plaintiff has not made any attempt to plead facts to establish any of these elements. Although he asks for a delay in ruling so that he can conduct discovery regarding Tarrant County's policies regarding restraints, Doc. 43 at 7, the court notes that plaintiff has had notice for quite some time of his

pleading deficiencies, but failed to address them. Specifically, Tarrant County filed a motion to dismiss on March 31, 2017, Docs. 20, 21. In response, plaintiff filed an amended complaint, Doc. 30, which should have addressed the deficiencies but failed to do so. At this point, plaintiff would simply be going on a fishing expedition to see if he could state a claim.[7]

V.

Order

The court ORDERS that the motion of Barron be, and is hereby, granted in part, and plaintiff's claims against Barron for racketeering activity, malicious prosecution, and false imprisonment be, and are hereby, dismissed.

The court further ORDERS that, if Barron intends to pursue a motion for summary judgment based on qualified immunity, he file such motion by 4:00 on June 16, 2017.

The court further ORDERS that the motions of Harrington, Rohloff, and Tarrant County to dismiss be, and are hereby, granted, and that plaintiff's claims against said defendants be, and are hereby, dismissed.

---

[7] Plaintiff confirms that he did not bring an action against Tarrant County under the Texas Tort Claims Act, Doc. 43 at 7, although he appears to argue that the handcuffs and shackles could support such a claim. However, that some tangible property is merely involved is not enough; using the property must actually have caused the injury. Spindletop MHMR Center v. Beauchamp, 130 S.W.3d 368, 371-72 (Tex. App.–Beaumont 2004, pet. denied). Here there is no reason to believe that the property itself was defective.

17

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of the claims against defendants Harrington, Rohloff, and Tarrant County.

SIGNED June 1, 2017.

_____
JOHN McBRYDE
United States District Judge