```
          IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF TEXAS
                   FORT WORTH DIVISION

DAVID B. COLLIE,                §
                                §
          Plaintiff,            §
                                §
VS.                             §   NO. 4:17-CV-211-A
                                §
HUGO BARRON, ET AL.,            §
                                §
          Defendants.           §
```

MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant Hugo Barron ("Barron") for summary judgment. The court, having considered the motion, the response of plaintiff, David B. Collie, the reply, the record, the summary judgment evidence, and applicable authorities, finds that the motion should be granted.

I.

Plaintiff's Claims

The operative pleading is plaintiff's first amended complaint filed April 18, 2017. Doc.[1] 30. Pertinent to Barron, plaintiff alleges:

On July 27, 2016, at approximately 11:55 p.m., the City of Fort Worth received a 911 call regarding a robbery committed by two black males. The first suspect was in his teens or early 20's, 6'1" tall and weighed approximately 180 pounds, having a small "afro." The second suspect was 6'4" tall and also in his

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

teens or early 20's. Doc. 30 at 4-5, ¶ 19.[2] Barron, an off-duty Fort Worth Police Officer wearing his uniform and driving a police car, searched apartment complexes in the area. Doc. 30 at 5, ¶ 20. Upon seeing plaintiff, who was 33 years old, 5'6" and 150 pounds, Barron got out of his police car and shot plaintiff in the back seven seconds later. Barron did not use cover, did not give clear commands, did not call or wait for additional law enforcement personnel, did not use additional illumination, did not warn plaintiff he would shoot, and did not determine whether plaintiff posed a threat to safety before shooting plaintiff. Doc. 30 at 5, ¶ 20. The bullet struck plaintiff in the back, punctured a lung, and severed his spine. Doc. 30 at 6, ¶ 20. According to internal affairs interviews, Barron and another officer accompanying him, Vanesa Flores ("Flores"), were yelling potentially conflicting commands at plaintiff. Doc. 30 at 6, ¶ 21. Plaintiff was charged with aggravated assault on a public servant, which was ultimately resolved in plaintiff's favor. Doc. 30 at 7, ¶ 23.

Plaintiff's only remaining claim against Barron is for use of excessive force. Doc. 46.

---

[2]The police report to which plaintiff refers does not describe the suspects in this manner, but only says that the first was a black male wearing no shirt, black basketball shorts, and Nike Air Foamposites and was around 6'1" and skinny, having a short afro hair style . The second suspect was also shirtless, wearing khaki pants, around 6'4" and skinny, and having short hair. Doc. 30, Ex. A.

2

II.

## Ground of the Motion

Barron asserts that he is entitled to qualified immunity from the claim asserted by plaintiff.

III.

## Applicable Legal Principles

A.  Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its

3

case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[3] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

---

[3] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

B.   Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40. In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. Elder v. Holloway, 510 U.S. 510, 512 (1994). If public officials of reasonable competence

5

could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Mullenix v. Luna, 136 S. Ct. 305, 308 (2015); Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. Siegert, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred. Connelly v. Comptroller, 876 F.2d 1209, 1212 (5th Cir. 1989). A mistake in judgment does not cause an officer to lose his qualified immunity defense. In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley, [475 U.S.] at 343. . . . This accommodation for

6

> reasonable error exists because "officials should not err always on the side of caution" because they fear being sued. . . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. <u>Kovacic v. Villarreal</u>, 628 F.3d 209, 211 (5th Cir. 2010); <u>Foster v. City of Lake Jackson</u>, 28 F.3d 425, 428 (5th Cir. 1994).

C. <u>Excessive Force</u>

The elements of an excessive force claim are (1) an injury, (2) that resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness was clearly unreasonable. <u>Freeman v. Gore</u>, 483 F.3d 404, 416 (5th Cir. 2007). A use of deadly force is presumptively reasonable when an officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others. <u>Mace v. City of Palestine</u>, 333 F.3d 621, 624 (5th Cir. 2003).

The reasonableness of use of force is to be determined from the perspective of the officer on the scene and not with "the 20-20 vision of hindsight." <u>Mace</u>, 333 F.3d at 625 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)). That the officer himself may have created the situation does not change the analysis. In other words, that the officer could have handled the situation better is not a factor in the constitutional analysis. <u>Young v. City of</u>

7

Killeen, 775 F.2d 1349, 1352-53 (5th Cir. 1985). See also City & Cty. Of San Francisco v. Sheehan, 135 S. Ct. 1765, 1777 (2015)(failure to follow training does not itself negate entitlement to qualified immunity).

IV.

Analysis

Barron is presumed to enjoy qualified immunity; abrogation of qualified immunity is the exception, not the rule. Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994). Thus, the burden is on plaintiff to show that Barron's allegedly wrongful conduct violated clearly established law. Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008). To be clearly established, existing precedent must place the statutory or constitutional question beyond debate. White v. Pauly, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. Id. at 552. Thus, the failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat plaintiff's ability to overcome a qualified immunity defense. Id.; Surratt v. McClarin, 851 F.3d 389, 392 (5th Cir. 2017).

8

The affidavits of Barron and Flores describe from their perspective what happened on the evening of July 27, 2016. Doc. 51, 12-21. The officers were working an off-duty job when they received a report of a robbery committed by two black males who left on foot toward an apartment complex. The two were shirtless, one wearing shorts and one wearing khaki pants. One of the robbers had a small silver handgun. Barron and Flores were in the area and began looking for the suspects when they saw plaintiff, who was shirtless and wearing shorts. They followed him to question him. They got out of their car and called to plaintiff to stop, but he continued walking. Barron withdrew his gun for protection since he knew that one of the robbers was armed. As plaintiff approached the edge of a building, Flores illuminated him with her flashlight. Plaintiff pulled his right hand out of his pocket and thrust it straight out in front of himself. He immediately swung his arm to the right, in the direction of Flores. Barron saw plaintiff holding something in his hand and believed it to be a gun about to be used to shoot Flores. He fired his weapon, striking plaintiff. Barron believed that if he did not fire his weapon, plaintiff would shoot Flores.

The affidavits are undisputed, except that plaintiff says that he did not have anything in his hands.[4] Doc. 55 at 41. Plaintiff does not dispute that he kept moving or that he raised and pointed his arm. Doc. 55 at 41-42.

Plaintiff relies upon the declaration and report of Andre Stuart, Chief Executive Officer of 21st Century Forensic Animations, ("Stuart"), Doc. 55 at 1-40, to support the allegation that two material fact issues preclude judgment in favor of Barron.[5] First, plaintiff says that he did not point his arm at Flores. Doc. 53 at 9-11. Second, he says that there is no evidence that plaintiff had anything in his hand. Doc. 53 at 12-13. Even if true, however, these facts do not create a material issue for trial, because the test is whether Barron acted reasonably in light of what he perceived. Whether plaintiff actually had anything in his hand, both Flores and Barron perceived that he did. And, whether plaintiff ever pointed his arm at Flores, he was moving his arm in a manner that Barron perceived to be a threat to Flores. The dash cam video is the best evidence of what transpired, Scott v. Harris, 550 U.S. 372, 380-81 (2007), and it supports the facts as described by Barron.

---

[4]Plaintiff includes a section in his brief titled "Disputed Material Facts," but he does not cite any summary judgment evidence to support these alleged facts. Doc. 52 at 6-7.

[5]The court is not satisfied that Stuart is qualified to testify as an expert, but accepts his testimony of the purposes of this summary judgment motion.

Finally, plaintiff does not cite, and says he does not have to cite, a case with a similar fact pattern to show the clearly established law. Doc. 53 at 20. He simply makes conclusory allegations that he did not present a threat to the officers. He implies that it was wrong for Barron to confront him, since he is much shorter than the robbery suspects,[6] but he has no case authority to support that proposition. He says that he posed no immediate threat, but the video appears shows (and plaintiff's expert confirms) that plaintiff reached into his pocket before raising his arm straight out in front of him and starting to swing it, as if he might have had a weapon. Under these rapidly-evolving circumstances, the court cannot second-guess Barron's actions, especially when plaintiff has made no attempt to show that the law in this particular set of circumstances was clearly established and that the shooting of plaintiff was clearly a violation of his constitutional rights.[7] See Graham, 490 U.S. at 390. Plaintiff has not overcome Barron's defense of qualified immunity as to his excessive force claim.

---

[6] There is no summary judgment evidence to dispute that Barron and Flores did not have a description of the height, weight, and ages of the suspects at the time they encountered plaintiff. Doc. 51 at 13-14.

[7] In particular, plaintiff does not cite any authority to support the proposition that the court can or should use forensic animation or photogrammetry to analyze the actions of a police officer in a case like this one in determining whether he is entitled to qualified immunity. In light of the Supreme Court's directives that courts are not to second-guess or analyze in hindsight the actions of officers, such authority seems highly unlikely.

V.

<u>Order</u>

The court ORDERS that Barron's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on his claim for excessive force against Barron; and that such claim be, and is hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby, directs entry of final judgment as to the dismissal of all claims asserted by plaintiff against Barron.

SIGNED July 21, 2017.

_____
JOHN McBRYDE
United States District Judge